A. W. SPINNEY, *et al.,* v. WINTER PARK BUILDING AND LOAN ASSOCIATION; ANNIE RUBY JOHNSON, *et vir.*

162 So. 899.
Opinion Filed July 23, 1935.
Petition for Rehearing Denied August 28, 1935.

*George P. Garrett,* for Appellants;
*C. O. Andrews & Son,* for Appellees.

BUFORD, J.—The appeal in this case brings for review an order striking the amended answer of the defendants, A. W. Spinney and Bertha E. Spinney, his wife, and A. W. Spinney as Executor of the Estate of E. H. Bryant, deceased, in a suit instituted by Winter Park Building and Loan Association, a Florida corporation organized under the statutes of Florida pertaining to the organization, powers and duties of building and loan associations in this State, against Annie Ruby Johnson and her husband, Curtis Edwin Johnson, and the above named defendants.

The bill of complaint sufficiently alleged that the complainant was a building and loan association organized under the laws of Florida and exercising all the rights and privileges granted such corporations; that on February 15, 1927, the defendants, Annie Ruby Johnson and her husband, Curtis Edwin Johnson, subscribed for 35 shares of class B of the capital stock of the complainant of the par value of $100.00 per share; that on the same date, and after the issuance of said stock, the Johnsons borrowed from com-

plainant $3500.00 and to evidence the indebtedness they jointly executed and delivered to complainant their promissory note in the principal sum of $3500.00, which note provided that it should bear interest at 3/4 of one per cent. per month. The defendants agreed to pay the complainant monthly dues in the sum of $35.00 and all fines due or assessed against said 35 shares of capital stock and that the monthly payments of such dues on such stock should continue until the dues paid and the dividends credited to such stock should make same worth $100.00 per share, at which time the principal of the said loan should mature. Copy of said note was attached to the bill of complaint and made a part thereof. That in order to secure the payment of the loan with the interest, the dues and fines on said stock, the stock was assigned by an instrument in writing to the complainant in accordance with the by-laws of the complainant. That it was thereby provided that in case default should be made in the payment of any interest thereon or any part thereof or any payment of the monthly dues upon the stock, then complainant would have the right to cancel the stock and apply the withdrawal value thereof at that time upon the loan. But on the said date, that is February 15, 1927, in order to further secure the said $3500.00 advanced by plaintiff on the said 35 shares of stock of the building and loan association, the defendants, Annie Ruby Johnson and her husband, Curtis Edwin Johnson, made and executed to the complainant their mortgage deed whereby they pledged certain lands described in the bill of complaint located in Orange County, Florida, and therein and thereby did agree to make the payments as above outlined. It was provided that in case of default in the payments the entire sum secured and unpaid should be accelerated.

It is further alleged that on February 21, 1927, the mort-

gage was duly filed and recorded in Mortgage Book 116, page 219, Public Records of Orange County, Florida. Certified copy of the mortgage was attached to the bill of complaint and made a part thereof.

It is alleged that in accordance with the by-laws of the complainant and in the performance of the contract above referred to it was necessary for Annie Ruby Johnson and her husband, Curtis Edwin Johnson, to pay to the complainant the sum of $35.00 per month as dues on the stock and the further sum of $26.25 as interest on the loan. The note and mortgage provided that the mortgage indebtedness should be fully paid and discharged when the amount of dues and dividends credited to the said stock should amount to a sum equal to $100.00 each on the said 35 shares of stock subscribed for. It is alleged that certain fines accrued because of defaults.

It is further alleged that the sum of $1375.27 was paid and that there was an unpaid balance of $2124.73 which, because of the acceleration clause, became due and payable; that there was a sum of $627.20 delinquent interest due and the sum of $84.80 fine due and that the mortgage was subject to foreclosure for the entire amount as well as for all costs and attorneys' fees and for moneys advanced for expenses incurred in procuring abstract.

It is further alleged that A. W. Spinney and his wife, Bertha E. Spinney, and A. W. Spinney as Executor of the Last Will and Testament of E. H. Bryant, deceased, were made defendants in this suit because they claimed to have some interest in the property conveyed by the mortgage being foreclosed.

There was no allegation in the bill of complaint that the defendants, A. W. Spinney, and Bertha E. Spinney, his wife, or A. W. Spinney as Executor of the Last Will and Tes-

tament of E. H. Bryant, deceased, had incurred any personal liability for the payment of the debt constituting the basis of the cause of action.

Decree *pro confesso* was entered against the Johnsons.

The Spinneys filed their joint and several answers. The pertinent part of the answer is as follows:

"17. Further answering said bill of complaint, said answering defendants:

"Defendants A. W. Spinney and Bertha E. Spinney, his wife, purchased the property here sought to be foreclosed upon after the making of the mortgage herein described.

"18. A. W. Spinney as Executor of the Last Will and Testament of E. H. Bryant, deceased, acquired the fee simple title to said property from A. W. Spinney and Bertha E. Spinney, his wife, but did not assume the payment of said mortgage.

"19. With reference to said loan, said three defendants did not receive any stock in the Winter Park Building and Loan Association or any rights therein nor have they ever acquired any such stock or rights. The Winter Park Building and Loan Association has not ever recognized said three defendants as stockholders or sent them any notices or paid them any dividends to the knowledge of said three defendants, or accounted to them for any sums or demanded any accounting or any sums of them prior to the institution of this suit. Nor has plaintiff prior to the institution of this suit made any demand of any character upon any of said three defendants nor have said defendants or either of them ever refused any demand made by the plaintiff. Said three defendants have never had, any of them, any transaction regarding said loan with said plaintiff or made any agreement or contract with plaintiff.

"20. The alleged debt due by Annie Ruby Johnson and

Curtis Edwin Johnson to plaintiff and the alleged mortgage lien are in fact and in truth wholly void 'and of no effect because of gross usury exceeding 25% in the transaction and loan involved in said alleged debt and purported to be secured by said alleged mortgage. Said usury consists in this: Said plaintiff frankly recognized that said loan is usurious under C. G. L. 6937, 6938 and possibly 6942, but seeks to shelter this unlawful transaction behind the provisions of C. G. L. 6167, relating to loans on stock in building and loan associations by the building and loan association whose stock is involved. Yet, so it is that the loan in this instance was not made in accordance with the bidding provision of C. G. L. 6165 or in accordance with an agreement in writing for the payment of a premium as provided by C. G. L. 6165. Said loan was only colorably made against the stock of said building and loan association because said stock was not at said date, nor has it ever at any time since, been issued and delivered. The true purpose of said loan on the part of said borrowers was to secure a $3,500.00 loan on the security of the mortgaged premises. In order to secure same they were obliged by plaintiff to agree to purchase said stock of said plaintiff. The requirement by plaintiff of said borrowers that they purchase said stock was imposed upon the borrowers solely to enable the plaintiff to charge the borrowers usurious interest. The plaintiff did charge the borrowers usurious interest, as for instance, by providing that interest at 9% per annum should continue to accrue until the entire $3500.00 loan was paid in full although payments made by the borrowers denominated 'dues' and amounting to $35.00 a month were credited in truth and in fact to the principal of said debt. Thus the plaintiff claims $26.25 a month as interest even now though the plaintiff's bill acknowledged

payment of $1375.27 on the principal of the original $3500.00 debt. Moreover, the system of fines upon which $2.12 a month for 40 months is claimed is a mere palpable and inadequate evasion of the usury statute. Properly calculated and divested of the statutory cloak of protection afforded it by the building and loan association statutes, said transaction is one wherein the borrowers were assessed over 25% interest annually. Since said transaction was in violation of C. G. L. 6165, said plaintiff has no right to claim the protection of the usury statutes."

Then paragraph 20 of the Answer was amended by adding thereto paragraph 20-A, as follows:

"Paragraph 20 (a). The said Annie Ruby Johnson and her husband, Curtis Edwin Johnson, have duly authorized the said A. W. Spinney and Bertha E. Spinney, his wife, and A. W. Spinney as Executor as aforesaid, to interpose the defenses herein set up in paragraphs 19 and 20 of the original answer in this cause, and have waived their right to insist that the said A. W. Spinney, individually, and Bertha E. Spinney, his wife, and A. W. Spinney as Executor aforesaid do not defend against the foreclosure of said mortgage, because when they acquired the property upon which said mortgage is a lien they acquired same subject to the said lien and subject to the terms of said mortgage. And the said Annie Ruby Johnson and Curtis Edwin Johnson, her husband, have permitted and authorized the said A. W. Spinney, individually, and his wife, Bertha E. Spinney, and the said A. W. Spinney as Executor, aforesaid, to interpose the defense of no issue of stock, to the said Annie Ruby Johnson and Curtis Edwin Johnson, her husband, by the Winter Park Building & Loan Association, and further to interpose the defense of usury on the part of said Winter Park Building & Loan Association in and

about the making by said association to Annie Ruby Johnson and Curtis Edwin Johnson, of the loan evidenced and secured by the said Mortgage herein to be foreclosed. Said Spinneys are authorized and permitted by said Johnsons to interpose said defenses in order to defeat the right of the plaintiff association to foreclose said mortgage against the said A. W. Spinney, individually, and his wife, Bertha E. Spinney, and the said A. W. Spinney as Executor, as aforesaid."

The appellants say the question to be determined here is: "Where one buys real property from the fee title owner subject to a mortgage made to a Building and Loan Association organized under the laws of the State of Florida, and the purchaser of the property does not assume the mortgage and the circumstances of the making of the mortgage depart so far from the provisions of the Building and Loan Association laws as to divest the Association of the protection of the statutory exemption from the effect of the usury statutes (C. G. L. 6938), is the purchaser entitled to contest the mortgage foreclosure brought by the Building and Loan Association on the ground of usury, where the purchaser has been accorded full authority to invoke this defense of usury by the prior fee title owner to whom the loan was made?"

It occurs to us that when we have stated the facts as alleged in the bill of complaint and the allegations of the answer it becomes at once apparent that the answer sets up no defense against the foreclosure of the mortgage.

Section 17 of Chapter 10028, Acts of 1925, as amended by Section 13 of Chapter 11865, Acts of 1927, being Section 6167 C. G. L., provides as follows:

"Fines; interest; premiums; fees.—The by-laws may also provide for fines or interest for non-payment of dues, pre-

miums or interest, which shall not exceed five cents per share for each weekly delinquency or ten cents per share for each monthly delinquency. It shall, however, be unlawful for any association doing business in this State, to charge or collect from any of its members, on any stock or shares of stock therein, any money or moneys other than loan fees, dues on stock, premiums, interest and fines. All such fees, fines, premiums and interest shall be provided for in the by-laws and shall be credited to earnings, out of which expenses and dividends shall be paid, and no such charges or payments shall be deemed usurious, even if in some cases exceeding the legal rate of interest, and the same may be collected by law as other debts of like amount are now collected in this State, or as provided by the by-laws."

The allegations of the bill of complaint are sufficient to show that this transaction was within the purview of the statutes governing building and loan associations and the transactions of such corporations with their stockholders and the allegations of the amended answer are not sufficient to show a contrary condition.

Usury is a statutory defense and is not founded on any common law right, either legal or equitable. It is a defense which may be created by legislative Act and may be taken away or denied by legislative Act. See Coe v. Mueller, 74 Fla. 399, 77 Sou. 88.

The legislature of Florida has seen fit to authorize building and loan associations to provide for fines or interest for non-payment of dues, premiums or interest not to exceed five cents per share for each monthly delinquency and it is further provided that all fees, fines, premiums and interest shall be provided for in the by-laws and shall be credited to earnings out of which expenses and dividends shall be

paid and it is further provided that no such charges or payments shall be deemed usurious, even if in some cases exceeding the legal rate of interest and is provided further that some may be collected by law as other debts of like amounts are collected in this State.

So, under the allegations of the bill, the Johnsons themselves could not have interposed the defense of usury.

The reason behind this legislative enactment is sound.

A building and loan association is a sort of mutual benefit association. Each of the stockholders are assumed also to be borrowers. Section 15 of Chapter 10028, Acts of 1925, as amended by Section 11 of Chapter 11865, Acts of 1927, compiled as Section 6165 C. G. L., provides as follows:

"6165. Loans to Members.—Any association may provide in its by-laws for loans to its members who shall bid the highest premiums for priority in loans, or a given premium may be agreed upon in writing with the borrower, without bidding, in addition to interest, which premium may be payable at one time or part in installments and part in advance, or as shall be provided for in the by-laws."

From this it will be·observed that the association may either make loans to its members who shall bid the highest premiums for priority or the association may enter into an agreement in writing for the given premiums to be paid by the borrower, in addition to the interest, which premium may be payable all at one time or in installments. The premiums provided for in this contract were payable ·in installments and were provided for in a written contract.

And so it is, that one subscribes for stock for the very purpose of being eligible to become a borrower from the fund which he helps to create by the payment of his stock subscription. The stockholder of the building. and loan

association is recipient *pro tanto* of such benefits as may accrue from the contract which he executes with the association as well as from the contracts which all other stockholders execute with the association. This being true, the legislature has lifted the ban of usury to such an extent as to allow the stockholders to contract more liberally between themselves and within the organization than could lawfully be accomplished otherwise. Aside from this, however, there is another reason why we think the answer in this case set up no defense. The answer shows that the conveyance to the answering defendants was made and executed after the mortgage, and therefore, the conveyance to the answering defendants was made subject to the mortgage lien. In Ala-Fla. Co. v. Mays, 111 Fla. 100, 111 Fla. 783 (149 So. 61 and 149 Sou. 661), we said: (See text, 111 Fla. 108).

"It is conceded that where a grantee takes a conveyance subject to a mortgage he will be presumed to have included the mortgage debt in the purchase price. Pomeroy Eq. Jur. (3rd Ed.), Vol. 3, Sec. 1205; Shuler v. Hardin, 25 Ind. Rep. 386; McDonald v. Finseth, 155 N. W. 863."

This being true, it follows that insofar as defending against the foreclosure of a mortgage which constituted a lien upon the property at the time of the conveyance to the subsequent purchaser, such subsequent purchaser could interpose no defense to the pre-existing mortgage lien which he could not have interposed had he assumed to pay the mortgage. In the case of Powell v. Petteway, 69 Fla. 12, 67 Sou. 230, we held:

"A subsequent purchaser who expressly assumes the payment of a prior existing mortgage upon the property he buys as a part of the purchase price for such property, is estopped to defend against the foreclosure of such mort-

gage upon the ground of usury; and a person claiming title under one who is estopped will also be bound by the estoppel, even though the last right is based on a quit claim deed, containing no express recognition of the usurious mortgage and even though the penalty for usury extends only to the interest."

So it is by analogy we must arrive at the conclusion that a subsequent purchaser who takes title subject to a prior existing recorded mortgage upon the property is presumed to have included the mortgage debt in the purchase price and is estopped to defend against the foreclosure of such mortgage upon the ground of usury. The recorded mortgage being valid on its face, the purchaser is assumed to have recognized it as a valid lien against the property which he is buying. He is assumed to have taken the amount of the mortgage indebtedness evidenced by such recorded mortgage into consideration as a part of the purchase price and cannot be heard later to change his position in that regard.

For the reasons stated, we hold that the allegations of the amended answer are not sufficient to show that the contract between the building and loan association and the mortgagors was invalid because of usury. We further hold that if the original contract and mortgage had been tainted with usury the pleadings showing that the defendants, appellants here, purchased the property subject to a prior then existing recorded mortgage valid on its face estopped their interposing the defense of usury against the foreclosure of the mortgage in a suit where no personal decree for the payment of the mortgage debt is sought against such subsequent purchaser.

The order appealed from should be affirmed.

It is so ordered.

WHITFIELD, C. J., and ELLIS and DAVIS, J. J., concur.